IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Hartford Casualty Insurance Company, )<br><br>Plaintiff, )<br><br>v. )<br><br>Farley Associates, Inc., JJF Company, LLC, )<br>James C. Farley, Jr., James C. Farley, III, )<br>Janis I. Farley, and Catherine G. Farley, )<br><br>Defendants. )<br>_____ ) | C/A No. 0:13-547-CMC<br><br>**ORDER AND OPINION<br>ON MOTIONS TO DISMISS** |

Through this action, Plaintiff Hartford Casualty Insurance Company ("Hartford") seeks injunctive relief against and monetary recovery from two entities and six individuals (collectively "Indemnitors") who are parties to an indemnity agreement with Hartford ("Indemnity Agreement"). Dkt. No. 12 (Amended Complaint). The Indemnity Agreement provides, *inter alia*, that the Indemnitors will indemnify Hartford for losses and related expenses it might incur for bonds issued to one or more of the Indemnitors. Hartford alleges that it has already suffered in excess of seven million dollars in recoverable losses and expenses as a result of performance bonds issued on behalf of one of the Indemnitors, Farley Associates, Inc. ("Farley").

The matter is before the court on two motions to dismiss. The first motion (Dkt. No. 18) is pursued on behalf of a single Indemnitor, Defendant Catherine G. Farley ("Catherine"), who seeks dismissal for lack of personal jurisdiction. The second motion (Dkt. No. 19) is pursued on behalf of all Indemnitors and seeks dismissal under the federal abstention doctrine addressed in *Colorado River Water Conservation Dist. v. United States*, 424 U. S. 800 (1976) ("*Colorado River*

Abstention"). For the reasons set forth below, both motions are denied.

## I.        Personal Jurisdiction

### A.        Arguments

Catherine, a citizen of North Carolina, argues she is not subject to jurisdiction in this district because her contacts with South Carolina are not sufficient to support either general or specific jurisdiction. She notes, *inter alia*, that "she has never participated in any of the business or financial decisions of [Farley] related to this lawsuit," and has no other connection to the state other than co-ownership of a vacation home, that home having no connection to this litigation.

Hartford opposes Catherine's motion noting, *inter alia*, that Catherine:

(1)    is an officer (Secretary) of Farley, which is a North Carolina corporation but has its principal place of business and is a licensed general contractor in South Carolina;

(2)    signed the Indemnity Agreement in Lancaster County, South Carolina;

(3)    as such, is a party to a contract that is to be performed at least partially in South Carolina, including through issuance of bonds covering multiple projects in South Carolina; and

(4)    owns and receives income from a vacation home located in South Carolina.

Dkt. No. 25 at 2-3. Hartford argues the court may assert both specific and general jurisdiction based on these facts.

Through her reply, Catherine argues that her position as an officer of Farley is insufficient to establish personal jurisdiction because a company's contacts with the forum state are not normally imputed to an officer of the company. Dkt. No. 28 at 2 (citing *ePlus Tech., Inc. v. Aboud*, 313 F. 3d 166, 177 (4th Cir. 2002)). She also relies on her affidavit which denies that she made any business

or financial decisions relating to Farley.  *Id.*

Catherine also argues that her actions with respect to the Indemnity Agreement are insufficient to support the assertion of jurisdiction.  In this regard, she focuses on a claimed absence of evidence that she actually signed the agreement in South Carolina:

> Hartford also argues that Catherine has transacted business in South Carolina by virtue of her allegedly signing the Indemnity Agreement in Lancaster County, South Carolina.  However, *Hartford has not pointed to any evidence that the Indemnity Agreement was actually signed in South Carolina.*  In its Memorandum, Hartford claims that the Indemnity Agreement "contains a statement that the Indemnity Agreement was executed and entered into by Catherine Farley in 'State of South Carolina, County of Lancaster." The Indemnity Agreement contains no such statement. The Indemnity Agreement does contain an acknowledgment by a notary public, which certifies that the notary has been commissioned in Lancaster County, South Carolina.  And *although the acknowledgment does say that Catherine appeared before that notary, Beverly F. Clark, Hartford has not shown any evidence that such appearance happened in South Carolina.  The notary's acknowledgment merely shows that Catherine appeared before a South Carolina notary public and does not speak to where that appearance occurred.*

Dkt. No. 28 at 3 (emphasis added).

Despite this argument, Catherine does not expressly deny that she was within the State of South Carolina when she signed the Indemnity Agreement – a fact clearly within her personal knowledge.  Catherine also denies that "any part of the Indemnity Agreement was to be performed in this state."  *Id.*  In this regard, she focuses solely on the Indemnitor's duty to make payments which she asserts have no connection to South Carolina because they would be made to Hartford at its principal place of business in Connecticut.

### B.    Standard

Plaintiff bears the burden of establishing an adequate basis for asserting personal jurisdiction.  *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).  When raised in the context of a motion to

dismiss, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs*, 886 F.2d at 676.

In evaluating whether personal jurisdiction may be asserted over a nonresident defendant, the court applies a two-step process. *Base Metal Trading, Ltd. v. OJSC*, 283 F.3d 208, 212 (4th Cir. 2002). First, the court must determine whether the forum state's long-arm statute provides a basis for exercising jurisdiction. *Id*. Second, the court must consider whether assertion of personal jurisdiction comports with the constitutional requirements of due process. *Id*.

In South Carolina, the long-arm statute has been interpreted to be coextensive with the constitutional limits of the Due Process Clause. *See Southern Plastics Co. v. Southern Commerce Bank*, 423 S.E.2d 128, 130-31 (S.C. 1992). Consequently, the two-step inquiry compresses into one: whether the due process requirements are met. *See Sonoco Prods. Co. v. Interplast Corp.*, 867 F. Supp. 352, 354 (D.S.C. 1994). *See also Kimbrel v. Neiman-Marcus*, 665 F.2d 480, 481 (4th Cir. 1981) (South Carolina has the stated policy of extending by long-arm the jurisdiction of its courts to the farthest perimeter allowed by due process).

The due process test for personal jurisdiction has two related components: the minimum contacts inquiry and the fairness inquiry. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980). Due process requires that a nonresident defendant have certain minimum contacts with the forum such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). In broad terms, the assertion of personal jurisdiction satisfies due process if "the defendant purposefully avails itself of the privilege of conducting activities within the forum State," *Hanson v. Denckla*, 357 U.S. 235,

4

253 (1958), invoking the benefits and protection of its laws, *Moosally v. W.W. Norton & Co., Inc*, 594 S.E.2d 878, 884 (S.C. App. 2004), such that it "should reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297.

A single contact with the forum state is sufficient to give a forum personal jurisdiction over a defendant when the contact gives rise to, or figures prominently in, the cause of action under consideration. *See McGee v. International Life Insurance Co.*, 355 U.S. 220 (1957). Such contact must, however, create a "substantial connection" to the forum, and meet traditional standards of fair play and justice. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.18 (1985); *Moosally*, 594 S.E.2d at 884.

Overall, when determining whether the exercise of jurisdiction is reasonable in any given case, courts consider the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief. *Base Metal Trading*, 283 F.3d at 213-14 (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987)). However, when minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even serious burdens placed on the defendant. *Base Metal Trading,* 283 F.3d at 214.

Personal jurisdiction over an out-of-state defendant may be either specific or general. If the suit is unrelated to a defendant's contacts with the forum state, the court may only exercise general jurisdiction which requires a high level of contacts with the state. *See* S.C. Code Ann. § 36-2-802; *Helicopteros Nacionales de Colombia*, *S.A. v. Hall*, 466 U.S. 408, 414 (1984). Alternatively, a court may exercise specific jurisdiction, but only when a cause of action arises out of or is related to a defendant's activities within the forum state. *See* S.C. Code Ann. § 36-2-803; *Helicopteros Nacionales*, 466 U.S. at 414. The threshold level of minimum contacts necessary to confer specific jurisdiction is significantly lower than that required for general jurisdiction. *See Helicopteros*

*Nacionales*, 466 U.S. at 414 nn. 8-9; *Calder v. Jones*, 465 U.S. 783 (1984).

In this case, the court finds specific jurisdiction satisfied for reasons set forth below. The court need not, therefore, reach Hartford's alternative argument for general jurisdiction.

**C.    Analysis**

The Indemnity Agreement on which Hartford's claims against Catherine are founded contains the following introductory language

> The Indemnitors have requested or may request Hartford to furnish, procure, or assume or continue Bonds on behalf of any one or more of the Indemnitors. *The Indemnitors expressly warrant their material or beneficial interest in such Bonds and* in consideration for the furnishing, procuring, assuming or continuing of such Bonds, and other good and valuable consideration, the Indemnitors hereby *jointly and severally agree to the* [terms which follow.]

Dkt. No. 25-1 at 29 (emphasis added). A subsequent paragraph headed "Representations" contains similar assurances that each of the Indemnitors has "a substantial, material, and beneficial interest (a) in each of the other Indemnitors obtaining Bonds hereunder; and (b) in the transactions(s) for which any other Indemnitor has applied or will apply to Hartford for Bonds pursuant to this Agreement." Dkt. No. 25-1 at 32 ¶ 15.

The terms of the Indemnity Agreement impose obligations on all Indemnitors to provide security on demand and to "indemnify, exonerate and hold Hartford harmless from all loss . . . which Hartford incurs or sustains . . . because of having furnished a Bond" *Id.* at 30 ¶¶ 4, 5. The Indemnitors also jointly agree to give Hartford access to their books, records and documents and assign various rights including any rights arising from or relating to "any bonded or unbonded contracts . . . including but not limited to any and all sums due or which may become due under any contract" and "[a]ll right, title and interest of the Indemnitors in and to, (1) the work performed; [and] (2) all supplies, tools, plant, machinery, equipment and materials on or near work sites or

6

elsewhere[.]" *Id.* at 31 ¶ 9. In the event of default, the Indemnity Agreement gives Hartford rights including the right to "[t]ake posession of all or any part of the work under way or all contracts to which any Bond applies." *Id.* ¶ 10.

Catherine signed this agreement as one of the six Indemnitors. The two entity indemnitors listed business addresses in Indian Land, South Carolina and it is undisputed both then had their principal places of business in South Carolina. The bonds which give rise to Hartford's claims were issued in favor of Farley, which was and apparently remains a licensed general contractor in South Carolina, in part for projects to be completed in South Carolina.

By virtue of the above-quoted introductory provision and "Representation" section of the Indemnity Agreement, Catherine represented that she had a substantial interest in issuance of these bonds and in the underlying transactions guaranteed by those bonds. The combination of these representations and Hartford's issuance of bonds covering projects in South Carolina for Farley would be enough to establish specific jurisdiction in South Carolina with respect to Catherine's obligations under the Indemnity Agreement even if no other aspect of the Indemnity Agreement was considered. This is because these provisions link the Indemnity Agreement to the related transactions (South Carolina projects and related bonds).

Catherine was, however, only one of multiple Indemnitors *on the same contract*. As noted above, two of those Indemnitors had their principal place of business in South Carolina, thus their performance would occur at least partially within this state. For example, their contractual duties relating to inspection of books refers to actions which would normally occur at their principal places of business. The provisions relating to assignment of rights and activities in the event of default also refer to actions which would be performed in whole or in part in South Carolina, at least with respect to bonded jobs located within this state. Thus, whether or not Catherine's personal performance

would have been in South Carolina, the contract itself was to be partially performed within this state.

The assertion of jurisdiction in South Carolina is further supported by the reasonable inference that Catherine signed the Indemnification Agreement in South Carolina (or, at least, has waived her right to claim she did not). This inference arises from the caption of the notary's acknowledgment, which lists "State of South Carolina" and "County of Lancaster" before stating that Catherine "personally appeared" before the notary as well as Catherine's concession that the notary was a South Carolina notary.[1]

For the reasons set forth above, the court finds that Catherine is subject to personal jurisdiction in South Carolina. The court, therefore, denies Catherine's motion to dismiss for lack of personal jurisdiction.

**II.**    ***Colorado River* Abstention**

    **A.**    **Arguments**

All Defendants argue that this action should be dismissed based on the *Colorado River* Abstention doctrine in light of the pendency of a state-court action through which Hartford seeks injunctive and monetary relief (under a single conversion claim) against Farley based on alleged breach of the Indemnity Agreement. Dkt. No. 19-1 at 2. Defendants argue that abstention is favored by four of the six factors normally considered in resolving motions for abstention under the *Colorado River* Abstention doctrine.

Defendants focus, in particular, on the degree of progress of the state-court action which has been pending for almost a year and has mediation pending for July 24, 2013. As Defendants note,

---

[1] A South Carolina notary has no authority to notarize a signature affixed in North Carolina, while a North Carolina notary has no authority to notarize a signature affixed in South Carolina (and no reason to list South Carolina in the caption). *See* S.C. Code § 26-1-80 (jurisdiction of notary); N.C. Gen'l Statutes § 10B-9 (same).

Hartford has already sought and received injunctive relief in the state-court action through two orders issued by the state court. *Id.* at 4-5; Dkt. Nos. 19-5 (temporary restraining order issued August 16, 2012); Dkt. No. 19-6 (injunction entered August 29, 2012). The later of the two state-court orders enjoins Farley from expending funds from a specified bank account, except as specifically allowed by the order or as agreed by Hartford. It encourages further discussion between the parties and requires them to advise the court of the status of the matter (albeit by a date that had already passed when the order was entered). Finally, without specificity, it states: "Plaintiff's Motions for Preliminary Injunction are Otherwise Denied." Dkt. No. 19-6 ¶(G). This, presumably, included denying a request that the court "requir[e] *all Indemnitors* to provide Hartford the collateral to satisfy the estimated $2.9 million owing in contract funds, based on Hartford's initial analysis." Dkt. No. 19-8 at 7.[2]

On October 1, 2012, Hartford filed a "Continued Motion for Temporary Injunction" in the state-court action. This motion, which was directed solely to Farley, presumably sought broader relief than granted by the then-still-effective injunction issued August 29, 2012. Dkt. No. 19-9.[3] The state court denied this motion after a December 11, 2012 hearing, noting that there was no evidence Farley had violated the earlier orders and no other evidence justifying modification of the injunction. Dkt. No. 19-10.

In opposing the Indemnitors' present motion for dismissal, Hartford notes that the state-court action names only one Defendant, Farley, and seeks only limited relief, most critically injunctive

---

[2]  The state action does not name any Defendants other than Farley.

[3]  This motion sought, *inter alia*, (1) full control over the bank account addressed in the earlier motion, (2) a directive to the same bank to freeze any accounts Farley might have there, and (3) access to all of Farley's files for construction projects bonded by Hartford. Dkt. No. 19-9 at 7.

relief relating to control over particular funds (amounting to about two million dollars) deposited in a particular account. By contrast, the present action is pursued against all Indemnitors and seeks a substantially greater amount based on all sums paid out by Hartford on the bonds and not otherwise reimbursed (an amount exceeding seven million dollars). It is also not limited to any specific source of funds. Based on these distinctions, Hartford argues that the threshold requirement for *Colorado River* Absention does not apply, making it unnecessary to weigh the six factors. Hartford also argues that "[n]one of the six factors reflects the extraordinary circumstances required . . . to exercise abstention under *Colorado River.*" Dkt. No. 24 at 8.

Indemnitors did not file a reply.

### B.    Standard

The threshold question in deciding whether *Colorado River* Abstention is appropriate is whether there are parallel federal and state suits. *Great American Insurance Co. v. Gross*, 468 F.3d 199, 207 (4th Cir. 2006). "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *McLaughlin v. United Virginia Bank*, 955 F.2d 930, 934 (4th Cir. 1992).

If suits are parallel, the court should consider the following six factors in deciding whether abstention is appropriate: (1) whether the subject matter of the litigation involves property where the first court may assume *in rem* jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights. *Chase Brexton Health Servs., Inc. v. Maryland,* 411 F.3d

10

457, 463-64 (4th Cir. 2005). Although the Supreme Court has recognized the "virtually unflagging obligation" to exercise federal jurisdiction, it has emphasized "that the decision whether to defer to the concurrent jurisdiction of a state court is, in the last analysis, a matter committed to the district court's discretion." *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 664 (1983); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 19 (1983).

**C.    Analysis**

The state-court action asserts claims solely against Farley while the present action asserts claims against Farley and five other Indemnitors. Thus, while there is an overlap between the parties in the two actions, the parties are not "substantially the same."

The state court claims against Farley, are limited to pursuit of limited injunctive relief and a single conversion claim.[4] For purposes of this Order, the court presumes that both of these state-court claims fall within the scope of the claims asserted in this action. The claims against Farley in the present action are, however, far more extensive both in the legal theory pursued and the relief sought.[5] Moreover, the present action seeks relief under most of these multiple additional claims against five other parties in addition to Farley, with any recovery against those parties coming from

---

[4] The state-court complaint focuses on Farley's use of specific funds deposited into a specific account and whether those funds have been (or are being) misused.

[5] The present action seeks recovery for all non-reimbursed funds expended on multiple bonds (and related expenses), without limitation to any specific source of funds. This relief is sought under the following nine causes of action: (1) breach of contract against all Indemnitors (seeking specific performance of obligations including but not limited to duties to indemnify and provide collateral); (2) common law indemnity against Farley; (3) breach of express trust against all Indemnitors; (4) pursuit of injunctive relief against all Indemnitors; (5) contractual and common law exoneration against all Indemnitors; (6) reimbursement against Indemnitors; (7) declaratory judgment against all Indemnitors; (8) conversion against Farley; and (9) negligent misrepresentation (titled as if asserted against all Indemnitors but worded as if directed solely to Farley). All but the second, eighth, and ninth causes of action rely primarily on provisions of the Indemnity Agreement.

11

their separate assets.  The court finds the significantly greater breadth of the present action precludes a finding that the two actions address substantially the same parties and issues, despite some degree of overlap.  The court, therefore, finds that the threshold requirement for *Colorado River* Abstention is not satisfied.

Even if the court were to find the threshold requirement satisfied, it would not find the six factors favor abstention.  Instead, the court would find that, at most, one of the six factors favors abstention and then only weakly.

As Indemnitors concede, neither of the first two factors favor abstention.  *See* Dkt. No. 19-1 at 2 (stating that the first two factors are "inapplicable to the present case[,]" but arguing that "a balancing of the remaining four factors weighs in favor of this court abstaining[.]").[6]  As to the third factor, the court finds minimal risk of piecemeal litigation given the significant differences between the claims in the two actions.  While the state court matter has been pending longer and has progressed with respect to the specific injunctive relief sought there (fourth factor), Defendants have failed to show that it has progressed *as to most if not all of the issues presented in this litigation*, including as to the one duplicative claim for conversion.  Thus, this factor does not favor abstention. The fifth factor tips slightly in favor of abstention because State law provides the rule of decision on the merits.  The sixth factor does not favor abstention because the parties and issues raised in the two actions have only minimal overlay.  Thus, even though the state court system would be adequate to protect the parties' rights *were the issues presented to that court*, it cannot do so as the cases are

---

[6]  Defendants characterize these factors as "inapplicable."  It is more accurate to characterize them as weighing against abstention because (1) the subject matter of the litigation does not involve property where the first (state) court may assume *in rem* jurisdiction to the exclusion of others and (2) the federal forum is not an inconvenient one.

now framed because of the significant differences between the parties and claims.

In sum, Indemnitors have neither satisfied the threshold for application of *Colorado River* Abstention nor demonstrated that the six *Chase Brexton* factors weigh in favor of abstention. The court, therefore, denies Indemnitors' motion to dismiss based on *Colorado River* Abstention.

## CONCLUSION

For the reasons set forth above, the court denies both Defendant Catherine Farley's motion to dismiss for lack of personal jurisdiction and all Defendants' motion to dismiss based on *Colorado River* Abstention.

IT IS SO ORDERED.

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
July 15, 2013

14