IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Hartford Casualty Insurance Company, ) | |
| ) | |
| Plaintiff, ) | |
| ) | C/A No. 0:13-547-CMC |
| v. ) | |
| ) | **ORDER AND OPINION** |
| ) | **ON MOTION FOR PARTIAL** |
| Farley Associates, Inc., JJF Company, LLC, ) | **SUMMARY JUDGMENT** |
| James C. Farley, Jr., James C. Farley, III, ) | |
| Janis I. Farley, and Catherine G. Farley, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This matter is before the court on motion for partial summary judgment filed by Plaintiff Hartford Casualty Insurance Company ("Hartford"). ECF No. 45. Specifically, Hartford seeks summary judgment as to liability and damages on its causes of action for breach of contract (first cause of action) and common law indemnity (second cause of action). These claims are asserted against two entities and four individuals (collectively "Indemnitors") and arise out of a General Indemnity Agreement ("GIA") through which Indemnitors agreed to indemnify Hartford for losses and related expenses Hartford might incur for bonds issued on behalf of one or more of them.

For the reasons set forth below, the court grants Hartford's motion as to liability on its breach of contract cause of action based on undisputed evidence that Hartford has incurred losses and expenses covered by the GIA as a result of bonds issued on behalf of Indemnitor Farley Associates, Inc. ("Farley Associates"). The court awards Hartford damages in the amount of $10,058,731.97 on this cause of action. The court leaves open whether Hartford may be entitled to an additional $2,746,750 in damages on the contract cause of action. The court denies the motion to the extent

it seeks summary judgment on Hartford's claim for common law indemnification.

**STANDARD**

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Rule 56(c)(1) provides as follows:

(1)   A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

  (A)   citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers or other materials; or

  (b)   showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995). Neither may a party create a genuine issue of material fact by presenting his or her own conflicting versions of events. *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984) ("A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct.").

## FACTS

It is undisputed that Indemnitors are bound by the GIA through which they agreed to indemnify Hartford for any damages it sustained as a result of providing surety bonds on behalf of any of them. *E.g.,* ECF No. 44-1 (GIA reflecting signatures of or on behalf of each Indemnitor); ECF No. 52 at 1 (conceding in opposition memorandum that the GIA was "entered into by all Defendants"). It is also undisputed that Hartford provided bonds on behalf of Indemnitor Farley Associates. ECF No. 52 at 2 (stating in opposition memorandum that "Hartford was the surety and [Farley Associates] was the principal on payment and performance bonds . . . on thirteen (13) separate construction projects").

The provision of the GIA addressing the scope of indemnification reads, in relevant part, as follows:

> **5.     Indemnity and Exoneration**. The Indemnitors are jointly and severally liable to Hartford, and will indemnify, exonerate and hold Hartford harmless from all loss, liability, damages and expenses including, but not limited to, court costs, interest, attorney's fees, professional fees and consulting fees, which Hartford incurs or sustains (1) because of having furnished any Bond, (2) because of the failure of an Indemnitor to discharge any obligations under this Agreement, (3) in enforcing any of the provisions of this Agreement, (4) in pursuing the collection of any loss

> incurred hereunder, or (5) in the investigation of any claim submitted under any Bond.

ECF No. 45-2 at 2.

Settlement of claims on any underlying bond and the Indemnitors' resulting liability is addressed as follows:

> **7.     Claim Settlement**. Hartford has the right to adjust, settle or compromise any claim, demand, suit or judgment upon any Bonds without affecting the Indemnitors' liability under this Agreement. The Indemnitors shall immediately be liable to Hartford for all payments, plus interest thereon at the maximum rate permitted by law, from the date such payments are made by Hartford in the belief that either (1) Hartford was or might be liable therefore, or (2) they were necessary or advisable to protect Hartford's rights or to avoid or lessen Hartford's liability. Copies of checks or other evidence of such payments, including records of any nature maintained by Hartford in the ordinary course of business, shall be prima facie evidence of the existence and extent of the liability of the Indemnitors to Hartford.

*Id.*

Hartford has presented evidence that it made payments totaling $19,768,723.91 to adjust claims made on bonds covered by the GIA. ECF No. 45-3 (Affidavit of Jennifer Leuschner); ECF No. 45-4 (Payment List). This evidence includes a detailed list of disbursements made on the bonded projects. *Id*. After accounting for contract funds received from project owners, Hartford maintains its net loss is $12,805,481.97. ECF No. 45-3 ¶¶ 4, 9.

Hartford also relies on deposition testimony of each of the Indemnitors, which Hartford summarizes as follows:

> Farley Associates' Chief Executive Officer, James C. Farley, Jr. admitted that the Indemnitors breached the terms of the GIA prior to any involvement with the subject construction projects by Hartford. (Exhibit 3, James C. Farley, Jr. dep. at 55:19-22, 57:16-21 and 58:20-59:1). Farley Associates' President and FRCP 30(b)(6) corporate designee, James C. Farley, III, and Farley Associates' CEO, James C. Farley, Jr., both testified that they have no evidence to support any of the

> Indemnitors' affirmative defenses, set forth in their jointly filed Answer to the Amended Verified Complaint. (Exhibit 4, 30(b)(6) dep. of Farley Associates at 192:14 – 194:22 and 198:8-16; Exhibit 3 James C. Farley, Jr. dep. at 51:14 – 52:12, 54:20-23, 61:18-21 and 65:21-66:23). JJF Co. LLC's FRCP 30(b)(6) designee and Janis I. Farley also testified that they have no evidence to support the affirmative defenses asserted in the Answer. (Exhibit 5, 30(b)(6) dep. of JJF, Co., LLC at 33:6 – 42:3; Exhibit 6, Janis I. Farley dep. at 40:1 – 41:21). Catherine G. Farley also testified that she has no knowledge or evidence to support any defense asserted by any Indemnitor in this lawsuit. (Exhibit 7, Catherine G. Farley dep. at 53:23-54:22). Farley Associates' FRCP 30(b)(6) corporate designee also testified that Farley Associates has no evidence to dispute any of Hartford's losses. (Ex. 4, 30(b)(6) dep. of Farley Associates at 192:5–13).

ECF No. 45 at 3-4. The cited depositions were taken on February 25 and 26, 2014, less than two weeks before discovery closed on April 10, 2014. *See* ECF. No. 39 (Second Consent Amended Scheduling Order); depositions cited above.

Indemnitors do not point to any misstatement of the record in Hartford's summary of the cited deposition testimony. They do, however, challenge Hartford's characterization of the evidence as a concession that Indemnitors have no evidence to support their affirmative defenses, including failure to mitigate damages. Indemnitors note, first, that all of the inquiries regarding whether the deponent had evidence to support an affirmative defense were prefaced by "as you sit here today." Indemnitors also note that Farley Associates' corporate designee (James Farley, III ("Trey Farley")) responded affirmatively when asked whether he had any evidence that Hartford incurred any losses due to its own conduct. ECF No. 52 at 7 n.2 (citing Rule 30(b)(6) deposition ECF No. 45-6 at 195). Asked to elaborate, Trey Farley stated that he was referring to "[t]he method with which the projects were completed" and gave two examples. *Id.* The first example related to a ten-fold overpayment to a fencing subcontractor. ECF No. 45-6 at 195-96 (stating fencing subcontractor was paid $98,000 when it was only due $9,800). The second related to comments Trey Farley received from

subcontractors that the contractor hired to oversee completion of the work ("Completion Contractor") "had three or four management people walking around on the projects," even when all that remained was "a 20 item punch list." *Id.*

Indemnitors also rely on deposition testimony Trey Farley gave in his individual capacity. Through this deposition, Trey Farley adopted his earlier testimony as corporate designee except as to mitigation. ECF No. 52-1 at 2 (Trey Farley dep. at 5). As to mitigation, Trey Farley expanded on his earlier testimony, explaining that he believed Hartford had overpaid the Completion Contractor for two reasons. First, the Completion Contractor was paid over $3.6 million when Farley Associates had offered to do the same work for $500,000. Second, third parties had informed him that the Completion Contractor had overstaffed jobs. Trey Farley dep. at 52, 61. He corrected a misstatement during his earlier testimony as corporate designee, by conceding the ten-fold fencing overpayment had been corrected. Trey Farley dep. at 58, 60. He also conceded that he lacked evidence regarding Hartford's costs of completion or what demands were made by project owners. *Id.* at 51, 56-58. He, nonetheless, maintained that Hartford failed to mitigate damages. *Id.* at 62-63.

Finally, Indemnitors rely on a detailed Declaration by Trey Farley ("Farley Declaration") submitted in opposition to Hartford's motion for summary judgment. ECF. No. 52-1.[1] This Declaration first summarizes the events surrounding Hartford's decision to take over completion of the projects. While this summary indicates that some of Hartford's actions may have had a negative impact on Farley Associates, including impairing its ability to complete the underlying projects, there is no evidence or argument that Hartford's actions were improper under either the GIA or the

---

[1] Hartford argues that the court should exclude this Declaration, at least as it relates to mitigation of damages. Because the court finds Hartford entitled to summary judgment even with consideration of the Declaration, it need not decide whether it should be excluded.

6

underlying bonds. Similarly, while there are references to efforts by Farley Associates to cooperate in minimizing costs, there is no indication that Hartford was obligated to accept such offers. The most specific information relating to these efforts and related costs refers to Farley Associates' offer to carry out the remaining duties of general contractor for $500,000, far less than the $3,683,432 Hartford ultimately paid the Completion Contractor.

The Farley Declaration also points to a $2,746,750 discrepancy between the credit for collections from project owners Hartford uses in calculating damages and amounts Indemnitors believe were due from project owners when Hartford took over the project. This suggests Hartford may still receive an additional $2,746,750 from project owners, which would reduce the net damages by the same amount.

Finally, the Farley Declaration points to a difference between "committed payables" owed to suppliers and subcontractors when Hartford took over the project ($15,862,017) and the amount Hartford claims was expended for the same work ($16,085,293), suggesting the possibility that Hartford may have paid subcontractors roughly $223,000 more than Farley Associates was obligated to pay them to complete the subcontract work. The Farley Declaration points to seven examples of possible overpayments to subcontractors, all based on a comparison of contract prices and committed costs at the time Hartford took over the project to the amounts ultimately paid by Hartford. The Declaration does not offer support for the implicit premise that Hartford acted unreasonably (or, more critically, beyond the parameters of what is recoverable under the GIA) in making any increased payments.[2] Moreover, one of the cited examples relates to overpayment to the fencing

---

[2] No evidence is provided that would explain why the amount ultimately paid was more than the amount Trey Farley claims was owed when Hartford took over the project. Neither is there any indication Indemnitors sought to determine the reasons for the differences through discovery. *See*

subcontractor that Trey Farley conceded in his individual deposition had been corrected.[3]

## DISCUSSION

**Liability.**  Indemnitors do not contest liability as to either of the causes of action addressed in Hartford's motion for summary judgment.  The court has, nonetheless, independently reviewed the proffered evidence and legal arguments as to Hartford's claims for breach of contract and common law indemnity.  Having done so, the court concludes that the evidence and law establish that Indemnitors are liable to Hartford under the GIA as a matter of law.  The court, therefore, grants summary judgment on the issue of liability as to Hartford's first cause of action for breach of contract.

The court, however, does not find the facts and law so clear as to Hartford's second cause of action for common law indemnity.  This is, most critically, because Hartford has failed to address any basis for imposing liability on Indemnitors other than as a consequence of their express agreement to be bound by the GIA.  The court, therefore, denies the motion for summary judgment as it relates to Hartford's second cause of action.

**Damages.**  Because the court has granted summary judgment as to liability only as to the contract claim, it limits discussion of damages to that claim.  Under the Claim Settlement provision of the GIA, Indemnitors shall "immediately be liable to Hartford for all payments. . . made by

---

ECF No. 56 at 4 (Hartford's reply stating Indemnitors conducted no written discovery or depositions).

[3] The corrected overpayment was to Brabham Fence Company, which was paid $92,730.30 when it was only owed $9,273.03. Farley Declaration ¶ 30.  This appears to be the same error referenced in Trey Farley's deposition as corporate designee, which he conceded had been corrected in his subsequent deposition in his individual capacity. On reply, Hartford submits a copy of the check refunding the overpayment and confirms that the original overpayment has not resulted in an overstatement of damages.

Hartford in the belief that either (1) Hartford was or might be liable therefore, or (2) they were necessary or advisable to protect Hartford's rights or to avoid or lessen Hartford's liability." GIA ¶ 7. Evidence that Hartford has made such payments serves as "prima facie evidence of the existence and extent of the liability of the Indemnitors to Hartford." *Id.*

Hartford has presented evidence that it made payments to complete the work secured by bonds subject to the GIA. Under the plain language of the GIA, the fact that such payments were made constitutes "prima facie evidence of the existence and extent of the liability of Indemnitors to Hartford." *Id.*

Indemnitors assert that there are "material facts in dispute" regarding "the actual amount of total damages incurred and recoverable by Hartford; whether Hartford acted in good faith in connection [with] its completion of the Bonded Projects and settlement of claims; whether Hartford's payments were reasonable; and whether Hartford failed to mitigate its damages." ECF No. 52 at 6. Indemnitors have not, however, proffered any evidence that Hartford, in fact, paid less than $19,768,723.91 to complete work secured by bonds issued on behalf of one of them. Thus, they have failed to proffer evidence to overcome Hartford's prima facie showing (as defined in the GIA) of the existence and extent of their liability.

At most, Indemnitors proffer evidence consistent with the possibility Hartford paid more than was necessary to the Completion Contractor and some subcontractors to complete the bonded projects. Indemnitors have not, however, proffered evidence that would move this possibility into the realm of probability. Most critically, Indemnitors have failed to proffer evidence that Hartford made any payment (whether more than was strictly necessary or not) without the requisite belief that Hartford was or might be liable for the payment or the payment was necessary or advisable to protect

9

Hartford's rights or lessen its liability. *See* GIA ¶ 7. It follows that Indemnitors have failed to raise a genuine issue of material fact which would preclude entry of summary judgment on this aspect of the damages determination.

One argument by Indemnitors justifies reduction of the damages to be awarded on summary judgment. This argument relates to payments Hartford may still collect for completion of the project and is supported by the Farley Declaration, which suggests that amounts still due total $2,746,750. Because Hartford has not pointed to any contrary deposition testimony by Trey Farley (including testimony suggesting an absence of evidence on the relevant point), the court accepts the Declaration for purposes of this issue.[4]

In light of this evidence, the court finds there is a genuine issue of material fact as to the amount of damages, but only with respect to whether Hartford is still due amounts from any project owners (in the maximum amount of $2,746,750). The court, therefore, finds for purposes of summary judgment that Hartford is entitled to an award of no less than $10,058,731.97. Whether the additional amount is also due will be determined at trial or by other alternative proceedings as may be appropriate.

**Further Proceedings.** This order determines liability and partially determines damages as to Hartford's first cause of action. It leaves open a relatively discrete damages issue as to Hartford's first cause of action as well all issues on Hartford's remaining claims.

---

[4] In the body of its reply, Hartford appears to concede that this reduction should be made for purposes of summary judgment: "For purpose of this Motion only, Hartford submits that summary judgment in its favor against all Indemnitors in the amount of $10,058,731.97 (*i.e.*, $2,746,750.00 less than Hartford's actual damages) would be appropriate." ECF No. 56 at 3. The conclusion, however, continues to seek $12,805.481.97 in damages. The lesser amount is referenced as an alternative request.

Recognizing that Hartford's other causes of action may seek the same damages (ultimately requiring an election of remedies)[5] and the possibility that the open damages issue on the first cause of action may be subject to resolution by means other than trial, the court directs the parties to confer and file a status report no later than May 28, 2014, regarding what further proceedings are necessary and appropriate. To the extent trial is necessary, the pretrial deadlines remain as set in the Second Consent Amended Scheduling Order.

## CONCLUSION

For the reasons set forth above, the court grants partial summary judgment to Hartford on its first cause of action for breach of contract, and finds Indemnitors jointly and severally liable to Hartford in the amount of $10,058,731.97. This determination does not preclude Hartford from establishing that additional amounts are due under its first cause of action as set forth above. The parties shall confer and file a status report relating to further proceedings as indicated above ("Further Proceedings").

IT IS SO ORDERED.

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
May 12, 2014

---

[5] Hartford suggests this possibility in its opening memorandum. ECF No. 45 at 1 n.2.

11